1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11      TERAGREN, LLC, a Washington limited          Case No. C07-5612RBL
        liability company,

12
                        Plaintiff,                   ORDER DENYING IN PART AND
13                                                   GRANTING IN PART TERAGREN'S
                v.                                   MOTION FOR RECONSIDERATION
14
        SMITH & FONG COMPANY, a California
15      corporation,

16                      Defendant.

17

18

19          This matter is before the court on Plaintiff Teragren's Motion for Reconsideration [Dkt. #60] of the

20   Court's Markman Claims Construction ruling [Dkt. #59]  Teragren aks the court to revise its construction of

21   the term "random orientation" as used in United States Patent No. 5,543,197 (the "'197 patent"), and to

22   clarify its ruling that the patent's claims do not apply to multilayered or laminated structures.  For the reasons

23   outlined below, and in the Markman Ruling, the Motion is Granted in part and Denied in part.

24      **A.      Standard for Reconsideration**

25      Local Rule CR 7(h) provides in relevant part:

26      Motions for reconsideration are disfavored.  The court will ordinarily deny such motions in the
        absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority
27      which could not have been brought to its attention earlier with reasonable diligence.

28      Motions for Reconsideration are also disfavored, and should be denied in the absence of a showing

1    of manifest error in the prior ruling or a showing of new facts or legal authority that could not have been

2    brought to the court's attention earlier with reasonable diligence." *See Goldstein v. Continental Casualty Co.*,

3    509 F.3d 1042, 1051 (9th Cir. 2007).

4        Defendant[1] urges the Court to deny the Plaintiff's Motion under this standard, arguing both that

5    Plaintiff has failed to demonstrate manifest error and that it in fact invited the claims construction it now asks

6    the Court to revise.

7        The Court will address the merits of the Plaintiff's Motion notwithstanding the Defendant's technical

8    objections to it.

9        **B.    The Court will not Reconsider its construction of the term "random orientation" of the bamboo segments.**

10

11   Teragren asks the Court to Reconsider its ruling that the term "random orientation" in the '197

12   patent requires that the "bamboo segments have random, not uniform lengths, and are staggered or lapped

13   along the length of the beam." [Markman Claims Construction Ruling, Dkt. #59, at 9].

     Specifically, the Court ruled:

14

15           The randomness feature of Plaehn's invention specifically included the
             notion that the bamboo segments would be of random lengths, and placed
             into the beam in a generally parallel fashion, but randomly with respect to
16           their vertical, horizontal, and rotational orientation, and furthermore that
             they would be randomly staggered and lapped along the length of the beam.
17           For these reasons, the Court concludes that the term "random" or "randomly
             oriented"as used in claims 1, 5, and 7 means that the bamboo segments and
18           stocks used to construct the bamboo beam are not placed in an orderly or
             uniform  fashion; they do not have a top or a bottom, or a front or a back.
19           Instead, they are placed at random. As used in the '197 patent, the term also
             requires that the generally parallel bamboo segments have random, not
20           uniform, lengths, and are staggered or lapped along the length of the beam.

21

22       Plaintiff Teragren argues that the requirement of "random lengths" and "staggered or lapped"

23   placement along the length of the beam are both in error.

24       It focuses on the language of the claims themselves which describe segments having a random

25   vertical and horizontal orientation with respect to each other (see claim 5), and about the length and width

26   of each of said segments (see claim 1) and with respect to each other about the width and height of the

27   bamboo beam (see claim 7).

28

---

     [1]Defendant Smith & Fong and Intervenor Anji Tianzhen jointly oppose Plaintiff Teragren's Motion
     and will be referred to as "Defendant" in this Order.

1    Teragren argues that none of these claims requires that the bamboo segments have random (or not

2  uniform) lengths, or that they be staggered or lapped along the length of the beam.  Indeed, they argue,

3  the lengths of the segments are specified in claim 5 – the segments are to be, in substantial number,

4  between 5 and 20 feet long, with shorter or longer segments permissible in small quantities.

5    Teragren argues that the '197 patent describes a beam that contains bamboo segments randomly

6  oriented vertically, horizontally, and rotationally, but that are not necessarily lapped or staggered, and are

7  not necessarily of random (or non-uniform) lengths.  Teragren effectively argues that the beams described

8  in the patent could be like a box of uncooked spaghetti; the individual segments are randomly placed, but

9  are of uniform length and are not staggered.

10    Defendant argues that Teragren itself argued in its opening Brief [Dkt. # 41] (as Plaehn had

11  argued to the Examiner) that the staggered bamboo segments eliminated the inherent limitation in using

12  bamboo as a structural wood substitute.  That inherent limitation – the distance between the annual rings

13  (weak points) in a given bamboo segment – was overcome in the Plaehn invention, because the staggering

14  allowed the manufacture of beams that were longer than that distance.

15    Teragren wrote:

16      In addition, the parallel stacking used in prior art beams limited the length of
       bamboo beams. The beams could only be as long as the distance between the annular rings
17      in the bamboo stock. In contrast, the random stacking of the patented invention eliminated
       this limitation because the staggering of the bamboo segments allowed the length of the
18      beam to exceed the length of the individual bamboo segments. This staggering also created
       a stronger and more consistent product. As the inventor explained:
19
       [T]he only mention in [the prior art] of a beam refers to using longitudinal layers
20      exclusively. The "longitudinal bamboo strips (1) are bamboo strips cut lengthwise
       uniformly," and [the prior art] recognizes the limitations created by the "presence
21      of annular rings in the bamboo trunk." citation omitted] Therefore, the length of the
       longitudinal strips, which are uniform in length, are limited by the distance between
22      the annular rings in the bamboo stock. (The presence of an annular ring in a
       bamboo strip may present a weak point and discontinuity, greatly reducing the
23      strength and uniformity of the bamboo strip.) This limitation greatly limits the
       possible lengths of the bamboo beams in [the prior art].
24
       In the present invention, however, such limitations in
25      beams [sic] length are not present. The bamboo strips do not have
       to be uniform lengthwise and may include the annular ring portions
26      of the bamboo segment. Furthermore, though the strips are parallel
       in direction, they are random in horizontal and vertical orientation
27      and length. The advantage is that the randomness of this process
       assures a uniform and length-wise staggered stacking of the
28      bamboo segments, allowing the length of the beams to exceed the
       length of the bamboo segments themselves and negating any
       weaknesses of the discontinuity of the annular rings. This

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> randomness not only ensures consistency in the physical
> characteristics of the bamboo beams, it also provides a product
> which is cheaper to manufacture because less work is required due
> to the random parameters.

[Dkt. #41 at 4, 5].

Teragren acknowledges that it recited this claims history, but strenuously denies that it ever asserted that the issued claims should be interpreted so as to require random lengths or staggering. [*See* Dkt. #70 at 2]. Teragren's opening Brief did not attempt to distinguish or explain away this prosecution history, though it also did not specifically reference it when articulating its own meanings for the claims' terms.

In any event, it is clear that Plaehn, and then his counsel, consistently sought a patent by emphasizing the primary benefit of his invention: the beams created could be longer than the distance between the annual rings because the segments were staggered. He repeatedly emphasized this feature in distinguishing the Chu patent. [See Seyedali Dec,; Dkt. # 39, at: Ex. A, Original Application, p.4; Ex. D, First Amendment, at p, 5; Ex. G January 1996 Amendment, at pp.7-8]. Each iteration of Plaehn's submissions to the Examiner, and the '197 patent itself, touted the invention's object as providing "a beam which can be manufactured to virtually any dimension." [ See '197 Patent, Seyedali Dec., Ex. H at 3]. As Plaehn consistently argued, this feature was the direct result of the randomness (as opposed to Chu's orderliness) of the bamboo strands, including their random lengths (generally within a range of 5 to 20 feet), and their random placement – or staggering – along the beam's length.

It is true that the issued '197 patent's claims do not specifically reference this feature. However, it is also clear that the Examiner, who repeatedly rejected Plaehn's applications before ultimately accepting his final Amendment, was not at any point concerned that the "randomness" described by Plaehn over time was an impediment to the issuance of the patent. Instead, the Examiner (and Plaehn) focused on whether or not his invention was sufficiently distinguished from the Chu patent's orderly stacking.

Based on this claim prosecution history, the Court concluded, and does conclude, that the meaning of the term "random orientation" as used in the '197 patent, means bamboo segments which have random, not uniform lengths, and which are staggered or lapped along the length of the beam.

The Plaintiff's Motion for Reconsideration on this point [Dkt.# 60] is therefore DENIED.

1 **B.     The Term "Bamboo Beam" Does not Include Layered or Laminated Products**.

2      Teragren seeks Reconsideration, or clarification, of the statement in the Court's Markman Ruling

3 that the term "bamboo beam" as used in the '197 patent "does not include laminated or layered products."

4 [Dkt. 59 at 5].  The Chu patent, which Plaehn sought to distinguish, taught a laminated and/or layered

5 bamboo board.  Plaehn's invention was not laminated or layered, and did not derive its structural strength

6 from any skin or core.  Put another way, the term "bamboo beam" as used in the '197 does not mean a

7 beam which has layers or is laminated.  Neither party disputes this ruling.

8      However, Teragren argues that adding a layer or lamination to an otherwise infringing product is

9 not sufficient to avoid infringement [*See* Dkt. # 60 at 11,12], and apparently asks the court to so rule in

10 this Order.

11      Defendant does not concede that adding a layer to an otherwise infringing product is necessarily

12 insufficient to avoid infringement, [*See* Dkt. # 68 at 9, 10] and suggests that the addition of a new element

13 may in some cases avoid infringement.  Defendant appears to argue that the issue of infringement is

14 beyond the scope of a Markman Claims Construction Ruling, and the Court agrees.

15      The Court's Markman Ruling was not intended to address whether an embodiment  which adds a

16 layer or lamination to an otherwise infringing product necessarily is or is not an infringement.   Nothing

17 in the Court's prior Ruling should be construed as a determination of that issue.  If and to the extent this

18 clarifies the Court's prior Ruling, the Motion for reconsideration on this issue is GRANTED.

19      IT IS SO ORDERED.

20      DATED this 5th day of May, 2009.

21      _____
        RONALD B. LEIGHTON

22      UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28